Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 10/7/2022

# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Project Restore, LLC, | ) | Case No. 3:22-bk-01897 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Randal S. Mashburn |

### ORDER AND MEMORANDUM OPINION DENYING MOTION TO DISMISS INVOLUNTARY PETITION OR, IN THE ALTERNATIVE, TO ABSTAIN BASED ON ARBITRATION AGREEMENTS, WITHOUT PREJUDICE TO OTHER ARGUMENTS

The putative debtor in this involuntary bankruptcy, Project Restore, LLC ("Debtor"), has sought dismissal of the case based on the impact of arbitration clauses in contracts signed by the three petitioning creditors. Alternatively, Debtor has requested that the Court abstain from hearing the involuntary bankruptcy case in deference to allowing the disputed claims of the petitioning creditors to first be resolved by arbitration.

Although there generally is a strong preference for enforcing arbitration agreements even in some bankruptcy matters, Debtor's position of requiring arbitration as a prerequisite to an involuntary petition would unduly thwart the rights of petitioning creditors and create a result at odds with the Bankruptcy Code. The critical initial issue in any involuntary bankruptcy is whether petitioning creditors' claims are subject to a bona fide dispute – not the actual allowance, disallowance, or liquidation of those claims. Determination of the validity of the petition and whether to enter an order for relief are matters over which this Court has exclusive jurisdiction and not something that can be punted to an arbitrator simply because the parties have an agreement to arbitrate their contract disputes.

## BACKGROUND

**Involuntary Petition and Response**

On June 16, 2022, Christopher M. Todd ("Todd"), Brian and Amy Maas (together as "Maas"), and R. Kenneth Barnes ("Barnes") (collectively, "Petitioning Creditors"), filed an involuntary petition against Debtor under Chapter 7 of the Bankruptcy Code. Each Petitioning Creditor claims to be owed an amount in excess of the statutory minimum of $18,600 relating to defaulted construction contracts. Debtor responded with a Motion to Dismiss, disputing any liability as well as the amount of the alleged debts, and requesting the Court dismiss the petition or abstain in favor of arbitration.

**Arbitration Provisions**

The construction contracts between Debtor and each of the Petitioning Creditors contain arbitration provisions. The provision from the Todd and Barnes contracts states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by the American Arbitration Association. The party demanding arbitration shall give written notice to the opposite party and the American Arbitration Association promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which a legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

The provision from the Maas contract is virtually identical but selects a different arbitration service than the one identified in the other two contracts. It states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by a single arbitrator, through JAMS. The party demanding arbitration shall give written notice to the opposite party and the JAMS promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

**Procedural Status**

The parties agreed to bifurcate the hearing on Debtor's motion to dismiss the involuntary petition. By consent, they set up a briefing and hearing schedule designed to carve out the legal issue on arbitration before moving forward with an evidentiary hearing on the factual questions that arise in an involuntary bankruptcy, such as whether the Petitioning Creditors' claims are subject to bona fide dispute and whether the Debtor is generally paying its debts as they become due.

The Court conducted a hearing on October 4, 2022, limited to the narrow issue of whether the stipulated existence of standard arbitration clauses in the pertinent contracts would mandate that the claims first be decided by an arbitrator before the involuntary bankruptcy could proceed. Alternatively, the Court was asked to determine whether the role of the arbitration clauses created a sufficient justification for the Court to exercise its discretion to abstain from the matter in deference to arbitration. For purposes of the hearing on October 4, 2022, it was stipulated that the contracts containing the arbitration provisions are authentic and admissible into evidence.

The agreed upon process was for the Court first to decide the arbitration issue and then, only if it declined to dismiss the case or abstain, proceed with an evidentiary hearing scheduled for November 3, 2022.

## DISCUSSION

**The Bona Fide Dispute Factor in Involuntary Bankruptcies**

In deciding the efficacy of an involuntary bankruptcy, the Court must determine, among other things, whether each petitioner has a claim for at least $18,600 that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). A bona fide dispute exists "[i]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts . . . ." *Riverview Trenton Railroad Co. v. DCS, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944–45 (6th Cir.

2007) (quoting *Booher Enterprises v. Eastown Auto Co.* (*In re Eastown Auto Co.*), 215 B.R. 960, 965 (B.A.P. 6th Cir. 1998) (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986))). The Sixth Circuit has stated that, "[i]mportantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist." *In re DSC, Ltd.*, 486 F.3d at 944–45.

Even though the Court will not actually resolve any genuinely disputed issue in connection with ruling on the involuntary petition, it is Debtor's position that the Court should dismiss the case or abstain from ruling on the petition because the Court cannot avoid deciding what Debtor argues to be non-core, arbitrable issues in the process of ruling on the petition. This is the fatal flaw in Debtor's reasoning. While it is true that it is impossible to avoid hearing evidence about the claims in determining whether they are subject to a bona fide dispute, it is not necessary to liquidate the claims or decide the ultimate allowance or disallowance of any claim.

One aspect of Debtor's argument relates to its view of the interpretation of section 303(b)(1). Debtor contends that the reference to "bona fide dispute as to liability or amount" means that any dispute whatsoever as to the precise amount renders a petitioning creditor ineligible. Under Debtor's approach, a bona fide dispute over whether a debt is $50,000 or $50,001 keeps the creditor from being an eligible petitioner. Petitioning Creditors take the position that the pertinent question is whether there is no bona fide dispute as to an amount of at least $18,600 and it is irrelevant whether there might be a legitimate debate about the exact dollar figure above that threshold amount.

Although the Court has not ruled on that interpretation question, it has indicated to the parties that it leans toward the view that a creditor can be a valid petitioner in an involuntary case as long as there is no bona fide dispute as to a minimum debt of $18,600. In doing so, it has generally accepted the rationale articulated in *In re Miller*, 489 B.R. 74, 81-83 (Bankr. E.D. Tenn. 2013).

Debtor has argued that, given the Court's view on how to interpret the statute regarding disputes over amounts, it would be impossible for the Court to enter an

order for relief without deciding that there is a valid claim in a minimum amount of $18,600 per Petitioning Creditor. Thus, Debtor argues, the Court would have to decide the merits of various defenses and even possible counterclaims that might be asserted by Debtor in making a ruling. In short, under Debtor's analysis, while the Court may not necessarily fully liquidate a claim in the involuntary bankruptcy decision process, it would effectively destroy any ability of Debtor to take advantage of the parties' agreed upon arbitration mechanism for resolving disputes about their contracts.

It is true that this Court would be required to hear some evidence relating to both liability and claim amount to rule on the involuntary petition. But it is not accurate to say that any ruling would be dispositive of the ultimate claim determination or preclude later arbitration on the claims. A similar scenario plays out frequently in the summary judgment context. A court might deny summary judgment because of a genuine issue as to material fact and later rule in favor of the same movant regarding the merits of the lawsuit. Likewise, a ruling on whether there is a bona fide dispute regarding a claim for the limited purpose of whether to enter an order for relief does not necessarily have any preclusive effect on the resolution of a specific claim. Indeed, it is possible to envision a scenario where an order for relief is entered but then the claim determination matter is still sent to an arbitrator who should have a clean slate in determining both liability and amount.

**Arbitration and Its Role in Bankruptcy**

The Federal Arbitration Act ("FAA") provides, in relevant part, that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 2–3. "The [FAA] … provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, § 4." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "The [FAA] thus

establishes a 'federal policy favoring arbitration,' requiring that '[courts] rigorously enforce agreements to arbitrate.'" *Id.* (citations omitted).

"At the same time, however, 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (additional internal quotation marks and citation omitted)). Disputes involving the Bankruptcy Code and the FAA often "present[ ] a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *United States Lines, Inc. v. Am. Steamship Owners Mutual Prot. and Indem. Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2nd Cir. 1999) (citation omitted).

Notwithstanding the FAA's enforcement requirements, "[l]ike any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226. When there is a tension between the FAA and another federal statute, courts must determine whether there is a contrary congressional command which may be deduced from (i) the text of the statute, (ii) the statute's legislative history, or (iii) an inherent conflict between arbitration and the statute's underlying purposes. *Moses*, 781 F.3d at 71 (citing *McMahon*, 482 U.S. at 227 (additional citation omitted)). The party seeking to prevent enforcement of the arbitration agreement bears the burden. *Id.*

Although the Sixth Circuit has not weighed in on whether Congress intended the Bankruptcy Code as a whole to conflict with the FAA under the *McMahon* standard, "other circuit courts of appeal have overwhelmingly concluded that neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case." *In re Patriot Solar Grp., LLC*, 569 B.R. 451, 456–59 (Bankr. W.D.

Mich. 2017) (citing cases from the Second, Third, Fourth, Ninth, and Eleventh Circuits).

In deciding whether an inherent conflict exists, courts typically first determine whether the dispute that would be subject to arbitration is a core or non-core proceeding pursuant to 28 U.S.C. § 157(b). *In re Patriot Solar Grp., LLC*, 569 B.R. 451, 457 (Bankr. W.D. Mich. 2017). If non-core, "a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends." *Id.* at 457-58. If core, "the court moves to the next step in the analysis—whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 458.

**Request to Arbitrate in the Context of the Involuntary Petition**

Starting with the first question of core or non-core, the determination of the validity of an involuntary petition is a core proceeding under 28 U.S.C. § 157(b)(2). *See In re Virginia Broadband, LLC*, 498 B.R. 90, 93 (Bankr. W.D. Va. 2013) (referring to a voluntary petition); *In re Loe*, No. 07-12045-BKC-RBR, 2007 WL 997581, at *1 (Bankr. S.D. Fla. Mar. 29, 2007) ("The determination of whether an order for relief should be granted in an involuntary case is a core proceeding." (citing 28 U.S.C. § 157(b)(2)(A) and 11 U.S.C. § 303(h))); *In re Fisher Island Invs., Inc.*, No. 11-17047-AJC, 2014 WL 1343269, at *3 (Bankr. S.D. Fla. Mar. 28, 2014) ("[T]he determination of the validity of the alleged debts underlying [involuntary] petitions is a core proceeding," since the "validity of those interests 'will determine[e] whether an order of relief should be granted.'" (citing In re Loe, 2007 WL 997581, at *1)). But that does not end the court's inquiry.

The court must next consider whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. "[C]ases finding a McMahon conflict concluded that the claims at the center of the dispute were directly related to the Bankruptcy Code." *Kiskaden v. LVNV Funding, LLC (In re Kiskaden)*, 571 B.R. 226, 233 (Bankr. E.D. Ky. 2017) (citing cases from Fourth, Fifth and Ninth

circuit courts of appeal). As it relates to the review of an involuntary petition, it is clear that there is an inherent conflict between the underlying purposes of the Bankruptcy Code and arbitration, at least to the extent that arbitration would preclude a creditor's right to pursue an involuntary bankruptcy.

First, through referral from district courts pursuant to 28 U.S.C. § 157, bankruptcy courts have exclusive jurisdiction over bankruptcy cases. *See* 28 U.S.C. § 1334(a) (With exceptions not applicable to the filing of a petition, "the district courts shall have original and exclusive jurisdiction of all cases under title 11."); *see also In re Garnett*, 303 B.R. 274, 277 (E.D.N.Y. 2003) ("Thus the filing of the petition commences the case, which has the effect under 28 U.S.C. § 1334(d) of vesting exclusive jurisdiction over the property of the debtor and of the estate in the district court, and hence the bankruptcy court, in which the petition is filed.").

Second, the bankruptcy court is the sole court with which a petition, whether voluntary or involuntary, may be filed to commence a bankruptcy proceeding. *See* 11 U.S.C. § 301, 303. A bankruptcy case could not be commenced by filing a petition for bankruptcy with an arbitrator.

Further, in reviewing a contested involuntary petition, the bankruptcy court must determine whether the petition satisfies the requirements of section 303 of the Bankruptcy Code and related Bankruptcy Rules, and then determine whether an order for relief should be entered, *see* § 303(h), something that happens simultaneously with the filing of a voluntary petition, *see* § 301(b). If the court were to refer a ruling on the validity of the involuntary petition and the decision as to whether to enter an order for relief to an arbitrator, the arbitrator could not enter any such order. The court would be delegating to an arbitrator a question over which Congress intended that bankruptcy courts have exclusive jurisdiction.

By requiring that bankruptcy cases be commenced by the filing of a petition in a bankruptcy court, Congress clearly intended bankruptcy courts to have the exclusive jurisdiction to evaluate and rule on the validity of such a petition. On these specific matters – whether an involuntary petition is valid based on the eligibility of

Petitioning Creditors and whether an order for relief should be entered – there is an inherent conflict between arbitration and the Bankruptcy Code.

Debtor seeks to ignore the clear distinction between a contested matter involving the validity of an involuntary petition, which does not require claim determination, and litigation over a claim. It would have the Court blend the two matters together and find that this Court should not decide the first issue because it is inextricably intertwined with the second issue that is subject to the arbitration provision.

Admittedly, this Court cannot decide if the petition is valid in terms of having qualified petitioners without some evidence about whether there is a bona fide dispute about Petitioning Creditors' claims, just as it must hear evidence about whether Debtor is generally paying debts as they become due. *See* 11 U.S.C. § 303. But at this stage the Court does not have to make ultimate determinations about claims any more than it must make ultimate findings about the likelihood of creditors to be paid from the Debtor's assets.

The Bankruptcy Code does not require that a petitioning creditor's claim be liquidated for it to support an involuntary petition; it just need not be shown by the debtor to be subject to a bona fide dispute. *In re Miller*, 489 B.R. at 82. If the Court accepted Debtor's approach on arbitration, the practical effect would lead to inconsistent treatment of petitioning creditors with and without arbitration agreements and would mean that any creditor who signs a contract with an arbitration provision has given up a basic right under the Bankruptcy Code. A creditor without an arbitration clause has the right to be a petitioning creditor without having a fully adjudicated claim. However, under Debtor's approach, a petitioning creditor with a disputed claim subject to an arbitration clause would have to have to have an arbitration award in order to qualify as a petitioning creditor, regardless of whether the dispute was bona fide.

Additionally, if the parties' positions were reversed, it is hard to imagine anyone seriously arguing that Debtor could be totally deprived of the right to file a

voluntary bankruptcy because its three primary creditors held disputed, arbitrable claims. From the Court's standpoint, a creditor cannot contract away its right as a petitioner in an involuntary case any more than a debtor can contract away its right to file a voluntary bankruptcy.

Debtor's counsel stated at oral argument that its request is not about forfeiture of any right of the creditors but merely enforcement of their agreements to arbitrate. However, creditors cannot prospectively delegate rights under the Bankruptcy Code to an arbitrator, so the effect of a dismissal or abstention at this stage would, indeed, be to deprive the Petitioning Creditors of a right under section 303 of the Bankruptcy Code without the Court ever hearing any evidence about the normal factors involved in an involuntary bankruptcy case.

Debtor has also asserted that the involuntary bankruptcy is merely a collection leverage tool being utilized by three disgruntled customers. That allegation could potentially go to the issue of whether the petition was filed in good faith. It does not provide a basis for requiring arbitration of the most fundamental issues involved in an involuntary petition.

One final point of emphasis should be made. This Court is making no determination at this time regarding whether arbitration should be used at some point in resolving disputes over the claims in the event an order for relief is entered. There are numerous variables that would come into play in making that determination – some requiring further legal analysis and some based more on practical considerations. The Court will consider those issues if and when they arise. For purposes of this ruling, the Court is simply holding that it is this Court, not an arbitrator, that must decide whether the involuntary petition is valid as it relates to the eligibility of Petitioning Creditors and whether an order for relief should be entered. This Court will not refrain from carrying out that obligation based on the existence of an arbitration agreement.

Debtor's motion is denied to the extent it seeks dismissal or abstention based on the arbitration agreements. The denial is without prejudice to any other argument raised in the motion to dismiss.

IT IS SO ORDERED.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.